Gibson, J.
delivered the opinion of the court.
The material question which arises out of the facts of this case is, whether the conveyance from Judge Wilson to Mr. Chew, and the subsequent conveyance of the legal title by Jeremiah Parker to Judge Wilson, vested a title in Mr. Chew clear of the incum-‡ brance of the mortgage If he should not succeed in reversing the 'judgment, on this ground,' he could gain no advantage by a reversal for any mere mouse-trap matter which should still leave the main result against him.
What is the nature of the estate which Mr. Chew acquired by the conveyance from Judge Wilson? When that conveyance was executed,' the legal title was in Jeremiah Parker, by patents from the commonwealth; and Judge Wilson having nothing but an equitable title under the articles, could convey nothing more. His deed, therefore, passed to Mr- Chew only an equitable title. But it is said the subsequent conveyance from Jeremiah Parker to Judge Wilson enured to the benefit of Mr. Chew. It did so; but only in equity, and to entitle him to call for a conveyance from Judge Wilson ; and not as vesting the title in him of itself, as contended, by estoppel. The facts presented constitute the ordinary case of a conveyance before the grantor has acquired the title; in which the conveyance operates as an agreement to convey, which, when the title has been subsequently acquired, may be enforced in chancery. But Judge Wilson’s act could not prejudice the original vendors, who had a title under the articles to call on him for a mortgage to secure the purchase-money. In equity, whatever ought to be done is considered as actually done; and this maxim is of_ peculiar force, and the foundation of all equitable practice, in this state, where we have no court of chancery to compel performance of what a party ought in conscience to perform; but it is so, only for the purpose of giving parties a common law remedy on an equitable title, and not of affecting their rights; for in every other respect the distinction between legal and equitable titles is as accurately marked, and as carefully preserved, here as in England. For the purpose of maintaining an ejectment, therefore, Mr. Chew is to be considered as having got in the legal title but for no other purpose whatever! But it is argued, that as the deed to Mr. Chew contains a covenant for further assurance, it is to be considered as a covenant to stand seised to the use of the grantee; and consequently, that the estate was executed in him as soon as the seisin arose out of which the use was to be served. It is true, that no particular form *392 of words is essential to a conveyance to uses; but the deed, if it cannot operate in one way, may in another, to effectuate the manifest intention of the grantor. But here there is not a single feature of a covenant to stand seized, the consideration of which is always blood or marriage; nor is there any of a bargain and sale, where the consideration is valuable; for in every conveyance to uses the covenantor or bargainor must be seised of the legal estate at the time; as the use must arise out of such seisin. In the case of a conveyance before the grantor has acquired the title, the legal estate is not transferred by the statute of uses; but the conveyance operates, as I have said, as an agreement, which the grantee is entitled to have executed in chancery: as was decided in Whitfield v. Fausset, 1 Ves. Rep. 391. Mr .Chew, therefore, never acquired any thing but Judge VFilson’s equitable title; and he held it subject to the countervailing equities to which it was subject in' the hands of Judge Wilson himself. When the mortgage was executed, the legal title was in the mortgagor; and even if the equity between Mr. Cheto and the mortgagees were equal, the mortgage, being a legal incumbrance, would prevail. But, that the equity between them was equal, cannot be admitted. The conveyance of the legal title to the mortgagor, was made expressly with a view to receive a mortgage from Judge Wilson, in pursuance of his covenant entered into previously to his conveyance to Mr. Chew; and with respect to equitable rights, the maxim of prior in tempore, potior in jure, is always decisive where neither of the parties has a better right than the other to call for the legal estate Brace v. The Duchess of Marlborough, 2 P. Wms. 495. Tourville v. Naish, 3 P. Wms. 307. Earl of Pomfret v. Lord Windsor, 2 Nes. Rep. 486. Nothing could postpone the mortgagees but actual or legal fraud; such as any act on their part to induce Mr. Chew to think he was buying a clear title. But even had Judge Wilson conveyed the legal title to Mr. Chew immediately after he received it from Jeremiah Parker, and before he executed the mortgage, Mr. Chew would still have stood in Judge Wilson’s place, and have been subject to the coercion of a chancellor, who would have compelled him to execute the mortgage in his stead. The reason is, that when he paid his money, he was the purchaser of an inchoate title; and there is no rule in equity more firmly established, than that such purchaser must stand or fall by the case of the person from whom he purchased. This was held in Whitfield v. Fausset, before cited; a leading case, which has never been denied. When we hear, therefore, of a purchaser for a valuable consideration, taking the title free of every trust or equity of which he had not notice, it is intended that he is the purchaser of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective to his own eyes; and he does so at his peril. Now, every equitable title is incomplete on *393 its face; it is in truth nothing more than a title to go into chancery, to have the legal estate conveyed; and, therefore, every purchaser of a mere equity takes it subject to every , clog that may lie on it, whether he has had notice of it or not. But the purchaser of a legal title, takes it discharged of every trust or equity which does not appear oh the face of the conveyance, and of which he has not had notice, either actual or constructive,
These few elementary principles go to the marrow of the cause,' and serve to decide every question which necessarily arises in it. The deed from Judge Wilson did not pass a title to Mr. Chew free of the covenants in the articles, and the mortgage consequently was a lien. The effect of recording this deed in Northumberland, and of recording that from Jeremiah Parker to Judge Wilson in Lycoming, was altogether immaterial. Notice, or the want of it, after the parties had respectively closed their contracts, and Mr. Chew had paid his money, would be attended with no consequences. So, the inquiry, whether Mr. Chew was apprized of the existence of the articles, was entirely irrelevant. He was bound to examine the title which he purchased; instead of doing which, he relied on representations, which turn out to have been without foundation in fact. An inquiry into the title would have led to a knowledge that it was merely equitable, and subject to the covenants in favour of the original vendors. It was also immaterial whether the bonds and mortgage were executed at the date of the conveyance from Jeremiah Parker, or at any indefinite period afterwards. A purchaser from Judge Wilson for a valuable consideration, and without notice, between the time the legal title was vested in him, and the date of the mortgage, would, perhaps, have not been affected; but this was not Mr. Chew’s case. He had paid his money long before for the title which Judge Wilson then had, and so far stood in his place, that a conveyance of the legal title, when acquired by the deed from Jeremiah Parker, would have made him a trustee, and subject him in chancery to Judge Wilson’s covenants. Had the two Parkers, and Moore Wharton stood by, while Judge Wilson was selling his title as perfect and complete, whether their" object were to obtain payment from the funds advanced by Mr. Chew or not, it would have made a very different ease; but as the matter appears on the facts in evidence, it is clear the sale on the mortgage vested in the purchasers all the interest which at any time was in Judge Wilson. Their title is in every respect paramount to that of Mr. Chew.
■ What I have said embraces every matter of substance in the long and complicated assignment of error in respect of the charge. There were, beside, bills of exceptions to evidence, which have either not been pressed, or not sustained. It is, therefore, the opinion of the court, that the judgment be affirmed.
Judgment affirmed,