McCURDY, COUNTY TREASURER, OSAGE COUNTY, OKLAHOMA, ET AL. *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 135. Argued January 4, 1924.—Decided April 7, 1924.

1. Lands in Oklahoma allotted in severalty to the Osage Indians were not taxable by the State while the title was held in trust by the United States. P. 486.
2. Under the Osage Allotment Act of June 28, 1906, title to surplus allotments did not pass from the United States until execution and delivery of deeds of the Principal Chief approved by the Secretary of the Interior (§ 8). *Id.*
3. The above act makes homestead allotments nontaxable, and surplus allotments nontaxable within three years from the approval of the act, "except where certificates of competency are issued or in case of the death of the allottee", the distinction between homestead and surplus depending on designation by the allottee evidenced in the allotment certificates and deeds. *Held,* that tracts allotted and deeded as surplus were not made taxable within the three year period, by the death of the allottees, where this occurred before the allotments had been completed and approved. P. 487.
4. The title acquired by an Osage Indian through the execution and delivery of the deed prescribed by this act cannot be related back to the time of the completion of allotments for the purpose of

validating taxes sought to be imposed while the land was held in trust by the United States.    P. 487.

280 Fed. 103, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which reversed a decree of the District Court dismissing a suit brought by the United States to enjoin collection of taxes, cancel tax sale certificates and recover taxes paid, on lands allotted to members of the Osage Tribe of Indians.

*Mr. Elmer E. Grinstead,* for appellants, submitted. *Mr. Charles L. Roff, Jr.,* and *Mr. Eugene F. Scott* were also on the brief.

*Mr. S. W. Williams,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The United States, as guardian and trustee for the Osage Indians, brought this suit against the county treasurer and taxing officers of Osage County, Oklahoma, and others, to restrain collection of unpaid taxes, to cancel certain tax sale certificates, and to recover sums paid as taxes on land in that county, which had been allotted to members of the Osage Tribe. The District Court dismissed the cause. The Circuit Court of Appeals reversed the decree and remanded the cause with instructions to grant the relief prayed.

The question is whether the allotted lands were subject to taxation for 1909. Under the state laws, land was taxable as of March 1 of that year. In 1883, these lands were purchased from the Cherokee Nation by the United States for the benefit of the Osage and Kansas Indians. Chapter 3572, 34 Stat. 539, approved June 28, 1906, known as the Osage Allotment Act, provided for the division of lands belonging to the Osage Tribe among its

members. (§ 2.) Each member was entitled to make three selections and was permitted to designate one as a homestead, which was required to be so designated in his certificate and deed, and it was provided that the homestead would be inalienable and nontaxable until otherwise provided by act of Congress. The other land allotted to each member was known as surplus land. (Subd. 4, § 2.) The Secretary of the Interior in his discretion and upon the petition of any adult member of the tribe, was empowered to issue to such member a certificate of competency authorizing him to sell and convey any of the lands " deeded him by reason of this Act." It was provided that " the surplus lands shall be nontaxable for the period of three years from the approval of this Act, except where certificates of competency are issued or in case of the death of the allottee, unless otherwise provided by Congress." (Subd. 7, § 2.) Further, that the lands of any deceased member should descend to his or her legal heirs according to the laws of Oklahoma,—except in certain cases not here material (§ 6), and that "All deeds . . . shall be executed by the principal chief for the Osages, but no such deeds shall be valid until approved by the Secretary of the Interior." (§ 8.)

The allotments were completed and approved by the Secretary November 19, 1908. All allottees had died prior to that date. All of the lands taxed were allotted as surplus lands. Deeds were not signed by the principal chief until May and June, 1909; and they were not approved by the Secretary until July 30 of that year. None of the allottees received a certificate of competency.

Title was in the United States on the date as of which the assessment was made, and did not pass until the execution and delivery of the deeds. (§ 8.) The lands were not taxable while held in trust by the United States. *United States* v. *Rickert*, 188 U. S. 432. See also *The Kansas Indians,* 5 Wall. 737; Oklahoma Enabling Act, 34

Stat. 267, § 1, c. 3335, approved June 16, 1906; Oklahoma
Constitution, Art. 1, § 3; Art 10, § 6.

·The death of the allottees before completion of the
allotment did not make the lands taxable as of March 1,
1909. The allotment was made about two and a half
years after the approval of the act and after the death of
all of the allottees. The three-year provision applies to
surplus and not to homestead lands. This classification
depends on selection and designation by the allottee, to
be evidenced in the certificates of allotment and the deeds.
It was impossible to ascertain as of March 1, 1909, what
lands were surplus.

Appellants suggest that the title which passed at the
time of the execution and delivery of the deed should be
held to relate back and take effect at the time of the com-
pletion of the allotments. The doctrine of relation gives
effect to an act done at one time as if it had been done at
another. It is a legal fiction adopted by courts solely for
purposes of justice,—to avoid denial or loss of right; but
not to impose burdens. Its application depends on some
antecedent right. *Gibson* v. *Chouteau,* 13 Wall. 92, 100;
*Lykins* v. *McGrath,* 184 U. S. 169; *United States* v. *Atchi-
son, T. & S. F. Ry. Co.,* 142 Fed. 176, 187; *Powers* v.
*Hurmert,* 51 Mo. 136. There is nothing in the Osage
Enrollment Act, or in the situation, requiring application
of the doctrine of relation against the Indians. The pro-
vision empowering the Secretary of the Interior to issue
certificates authorizing members found to be competent
and capable to sell and convey the " lands deeded " makes
ownership and right to sell depend on the deeds. If, on .
execution and delivery of deeds, title shall be deemed to
have passed prior to March 1, 1909, while in fact the land
was held in trust by the United States, the lands will be
burdened with taxes, which otherwise they would not be
subject to. We hold that the doctrine of relation should
not be applied.

*Affirmed.*