Roger SMITH, as Administrator of the
Estate of Ellerick Smith, et
al., Plaintiff,

v.

UNITED STATES of America, et
al., Defendants.

Cynthia DANIELS, et al., Plaintiffs,

v.

Cecil D. ANDRUS, Secretary of the
Interior, et al., Defendants.

Nos. C 74 1016 WTS, C 74 1061 WTS.

United States District Court,
N. D. California.

March 29, 1978.

George Forman, Oakland, Cal., David J.
Rapport, Lester J. Marston, Charles Scott,
Cal. Indian Legal Services, Ukiah, Cal., for
plaintiffs in both cases.

David E. Golay, Asst. U. S. Atty., San
Francisco, Cal., for federal defendants in
both cases.

Julie A. Torres, Law Offices of Ronald E.
Hothem, San Francisco, Cal., for County of
Mendocino, No. C 74 1016 WTS.

Lester J. Marston, Pamela S. Williams,
David J. Rapport, Cal. Indian Legal Serv-
ices, Ukiah, Cal., Bruce J. Friedman, George
Forman, Cal. Indian Legal Services, Oak-
land, Cal., for intervening plaintiffs, No.
C 74 1016 WTS.

Leslie R. Perry, McCarthy & Perry, Santa Rosa, Cal., for Hopland Nakomis Assn. and the named officers of said association, in No. C 74 1061 WTS.

Lee S. Adams, Deputy Dist. Atty., County of Mendocino, Ukiah, Cal., for Superior Court of Mendocino County, in No. C 74 1061 WTS.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

These two related actions, involving as the primary issue the question whether the United States government unlawfully terminated the Hopland Rancheria (the "Rancheria") located in Mendocino County, California, have been brought by Indian people of the Rancheria and are presently before the court on plaintiffs' motion for partial summary judgment.

## I. THE RECORD AND THE SUMMARY JUDGMENT MOTIONS

After extensive discovery and numerous status and pretrial conferences with the court, these related actions were to be submitted to the court for decision upon an agreed statement of facts. The federal defendants and the plaintiffs in both actions signed and filed the agreed statement of facts (*Smith*, Docket No. 27; *Daniels*, Docket No. 63). The Association defendants in *Daniels*, presently the holders of legal title to the water system lands on the Rancheria, then represented by counsel (but now appearing *in propria persona*), refused to sign the agreed statement or to state in what manner or to what portion of the agreed statement they could not agree (*Daniels*, Docket No. 69 Ex. 2).

In light of this problem this court vacated the intended submission of these actions. Plaintiffs then filed the pending motions for partial summary judgment, contending that there is no genuine issue of material fact on any issue in either case (except the amount of damages in *Smith*) and seeking all the declaratory and injunctive relief requested in the *Smith* and *Daniels* complaints.

An extensive evidentiary record has been compiled in support of the motions (*Smith*, Docket Nos. 33, 34; *Daniels*, Docket Nos. 78, 79).

The federal defendants in both actions have filed a response which is in substantial agreement with the plaintiffs—agreeing that the Rancheria was wrongfully terminated, that the trust obligations of the United States to the Indian people of the Rancheria still exists, and that the Indian distributees of Rancheria lands should be permitted to reconvey their lands to the United States if they have not already reconveyed their lands to good-faith non-Indian purchasers.

The Mendocino County defendants in *Smith* have filed no opposition nor any statement of non-opposition to the pending motion in *Smith*.

The Association defendants in *Daniels* have filed an opposition to the plaintiffs' motion, including certain evidentiary materials (*Daniels*, Docket Nos. 72, 76).

## II. THE CALIFORNIA RANCHERIA ACT

For many years there were throughout California numerous small Indian communities called rancherias, with title of the lands of these communities vested in the United States in trust for the resident Indians. Since the lands were held in trust, they could not be taxed by state or local authorities, see, *McCurdy v. United States*, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801 (1924), and the resident Indians had no power to convey title of the lands to others. The United States controlled the rancheria lands under the special fiduciary duty owed by the United States to the Indian people.

In 1958, Congress enacted the California Rancheria Act [P.L. 85–671, 72 Stat. 619], amended in 1964 [P.L. 88–419, 78 Stat. 390], which facilitated the termination of the trust relationship between the United States and the Indian people on forty-one enumerated rancherias and reservations in

California.[1] The Act provides a procedure for the termination of these rancherias and reservations and distribution of assets, including property, to eligible Indians in fee simple.

The preparation of a plan for termination of the Hopland Rancheria is mandatory. *See,* Sections 1 and 2(a) of the Act. However, such a termination plan does not become effective until approved by a majority of adult Indians who would participate in the distribution. *See,* Section 2(b) of the Act. Congress contemplated that such a termination plan be completed and the lands distributed not more than three years after it is approved. *See,* Section 2(b) of the Act. Thus, under the Act, actual termination of the rancheria is *permissive,* not mandatory, being dependent upon approval by a majority of the Indians who would participate in the distribution. *Duncan v. Andrus,* C–71–1572 WWS (N.D.Cal., March 22, 1977).[2]

Under Section 3(c) of the Act (as amended) the Secretary of the Interior and the Secretary of Health, Education, and Welfare (H.E.W.) were given certain duties pertaining to installation of sanitation and irrigation facilities:

"Sec. 3. Before making the conveyances authorized by this Act on any rancheria or reservation, the Secretary of the Interior is directed:

\* \* \* \* \* \*

(c) To construct, improve, install, extend, or otherwise provide, by contract or otherwise, sanitation facilities (including domestic and community water supplies and facilities, drainage facilities, and sewage—and waste disposal facilities together with necessary appurtenances and fixtures) and irrigation facilities for Indian homes, communities, and lands as he [the Secretary] and the Indians agree, within a reasonable time, should be completed by the United States: *Provided* That with respect to sanitation facilities, as hereinabove described, the functions specified in this paragraph, including agreements with Indians with respect to such facilities, shall be performed by the Secretary of Health, Education and Welfare in accordance with the provisions [of 42 USC § 2004a]".[3]

The federal defendants in both *Smith* and *Daniels* now concede that the Hopland Rancheria was not lawfully terminated because neither the Secretary of the Interior nor the Secretary of H.E.W. fulfilled their duties under Section 3(c) of the Act by negotiating an agreement concerning improvement of sanitation and irrigation facilities.[4]

## III. TERMINATION OF THE HOPLAND RANCHERIA

The Commissioner of Indian Affairs finally approved the termination plan for the Rancheria on May 22, 1961. The termination plan was approved by the eligible Indians of the Rancheria on June 18, 1961.

Before any actual distribution of lands to the eligible Indians, Section 3(c) of the Act was amended, requiring the Secretary of

1. Among the enumerated rancherias was the Hopland Rancheria. In 1964 the Act was amended to include all rancherias and reservations lying wholly in California.

2. In *Duncan* the primary issue was whether the United States government unlawfully terminated the Robinson Rancheria in Lake County, California.

3. 42 U.S.C. § 2004a provides certain authority to the Secretary of H.E.W. in regard to providing sanitation facilities and services.

4. The approved termination plan for the Rancheria did provide that the *Bureau of Indian Affairs* would provide water service to any existing home not then served or to any home under construction that was as much as 50% completed within 90 days after approval of the termination plan, provided such service could be accomplished within the limitations of the present water system or further expansion from known available water sources and such cost would not be excessive.

However, the amended Section 3(c) requires the *Secretary of the Interior* to enter into an agreement concerning construction of irrigation facilities and the *Secretary of H.E.W.* to enter into an agreement concerning construction of sanitation facilities. No such agreements have been negotiated.

the Interior and the Secretary of H.E.W. to reach agreements with the Indian people of the Rancheria on improvements to sanitation and irrigation facilities, as specified above. No such agreement was ever negotiated for the Rancheria. Actual delivery of deeds of Rancheria lands to eligible Indians did not begin until December 15, 1966, and continued up until July, 1967.

## IV. *THE SMITH ACTION*

### A. *The Allegations of the Complaint*

In *Smith* the plaintiff[5] has brought an action for damages and declaratory and injunctive relief against six defendants[6] alleging that the Rancheria was unlawfully terminated in that the United States failed to install adequate domestic and agricultural water systems on the Rancheria, under agreements to be negotiated with the Indian people of the Rancheria, prior to the alleged termination of the Rancheria and distribution of Rancheria lands to eligible Indians, including plaintiff.

Smith's first claim, brought under 28 U.S.C. § 1346(a)(2) against the federal defendants only, is for damages resulting from the United States' unlawful termination of the Rancheria and the subsequent invalid distribution of Rancheria lands to plaintiff. Plaintiff contends that after distribution of certain Rancheria lands to him, he was unable to pay his property taxes on two of his parcels which were eventually sold at a tax sale—to plaintiff's damage in the sum of $8,000. Plaintiff also contends that he has incurred tax liabilities of $1,000 on two remaining parcels of land.

Smith's second claim, brought under 28 U.S.C. § 1331 and § 1361[7] against only the Secretary of the Interior and the Commissioner of Indian Affairs, seeks declaratory and injunctive relief. Plaintiff seeks a declaration that (1) the Rancheria was unlawfully terminated and is not now in fact terminated, (2) the United States still owes a trust obligation to the Indian people of the Rancheria, (3) the conveyance of Rancheria lands to plaintiff was unlawful and that such conveyance is voidable at plaintiff's option, and (4) the plaintiff's remaining parcels are not subject to taxation by state or local authorities until the Rancheria is unlawfully terminated. Plaintiff also seeks an injunction requiring the Secretary of the Interior and the Commission of Indian Affairs to pay plaintiff's property taxes on his remaining parcels until the Rancheria is lawfully terminated.

Plaintiff's third claim, brought under 28 U.S.C. § 1331 and § 1343 and 42 U.S.C. § 1983 against only the Tax Assessor and Tax Collector of Mendocino County, seeks injunctive relief restraining future assessments or collections, levies, seizures, or sales of plaintiff's remaining parcels to pay present or future taxes until such time as the Rancheria is lawfully terminated.

### B. *Summary Judgment*

The federal defendants concede that the Rancheria was unlawfully terminated and should not be treated as terminated, that the United States still owes a trust obligation to the Indian people of the Rancheria, and that plaintiff Smith should be given the opportunity to reconvey his remaining parcels received during the distribution back to the United States—provided he has not already conveyed those parcels to good-faith non-Indian purchasers.[8]

---

5. Plaintiff Ellerick Smith had died since the complaint was filed. The administrator of his estate, Roger Smith, has been substituted as plaintiff (*Smith*, Docket No. 12).

6. The defendants are the United States, the Secretary of the Interior, the Secretary of H.E.W., the Commissioner of Indian Affairs (collectively the "federal defendants") and the Tax Assessor and Tax Collector of the County of Mendocino, California.

7. Plaintiff also claims jurisdiction under the Administrative Procedure Act (5 U.S.C. § 701 *et seq.*). However, that Act is not an independent grant of jurisdiction to federal courts. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

8. Good-faith non-Indian purchasers are not, under Rule 19, F.R.Civ.P., indispensable parties to these actions since any relief granted to plaintiff in this action will be tailored to avoid affecting the property interests of such third per-

This court has jurisdiction over the damage claim under 28 U.S.C. § 1346(a)(2), over the declaratory and injunctive relief claim as against the federal defendants under 28 U.S.C. § 1331 and § 1361, and over the Mendocino County defendants under 28 U.S.C. § 1331 and § 1343.[9] *See, Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *Duncan v. Andrus*, C 71 1572 WWS (N.D. Cal., March 22, 1977).

■ In light of the concessions made by the federal defendants, and upon this court's review of the undisputed facts, it is clear that the Rancheria was not lawfully terminated and should not be treated as terminated, and that the conveyance of certain Rancheria lands to plaintiff was unlawful since the Rancheria was unlawfully terminated.

It is clear, and undisputed, that the United States did not herein fulfill its fiduciary duties to the Indian people of the Rancheria, duties that must be exercised with "great care," *United States v. Mason*, 412 U.S. 391, 398, 93 S.Ct. 2202, 2207, 37 L.Ed.2d 22 (1973), in accordance with "moral obligations of the highest responsibility and trust", that must be measured "by the most exacting fiduciary standards". *Seminole Nation v. United States*, 316 U.S. 286, 297, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942).

■ Since the United States, acting in its capacity as trustee for the Indian people of the Rancheria, did not meet this fiduciary standard, it may be held liable to the Indians for lost or destroyed trust properties, or diminution in their value. *See, United States v. Mason, supra; Manchester Band of Pomo Indians, Inc. v. United States*, 363 F.Supp. 1238 (N.D.Cal.1973) (holding United States liable in damages for failure to properly manage Indian trust funds). Normally such damages would be payable to the tribe or band of Indians. *See, Manchester Band of Pomo Indians, Inc. v. United States, supra*. However, since plaintiff Smith has

individually suffered the loss by tax sale of two parcels distributed to him, any such liability of the United States should run directly to the plaintiff, for, upon approval of the Rancheria termination plan on June 18, 1961, by a majority of eligible Indians, plaintiff received a vested beneficial interest in the lands distributed to him, although he did not receive, at that time, the right to convey that property or subject it to encumbrance. 25 C.F.R. § 242.7 (1960), *now* 25 C.F.R. § 242.9 (1977).

Accordingly, plaintiff Smith is entitled to recover damages for the loss by forced tax sale of two parcels of Rancheria land distributed to him. The hearing of evidence on this damages claim will be promptly referred to a Magistrate, acting as a Special Master under Rule 53, F.R.Civ.P.

Furthermore, it is clear from the language of the California Rancheria Act that the lands of a rancheria covered by the Act are not subject to federal, state, or local taxation until the rancheria is lawfully terminated in accordance with the provisions of the Act and the lands distributed to eligible Indians.

Section 2(d) of the Act provides:

"No property distributed under the provisions of this Act shall at the time of distribution be subject to any Federal or State income tax. Following any distribution of property *made under the provisions of this Act*, such property and any income derived therefrom by the distributee shall be subject to the same taxes, State and Federal, as in the case of non-Indians . . . ." (emphasis added)

Section 10(b) of the Act, as amended, provides:

"After the assets of a rancheria . . . have been distributed *pursuant to this Act*, the Indians who receive any part of such assets, and dependent members of their immediate families who are not members of any other tribe or band of Indians, shall not be entitled to any of the services

---

sons, who have not been named as defendants in this action.

**9.** The defendants have not contended that this court is without jurisdiction to hear this action. (*See, Smith* Docket Nos. 18, 20).

performed by the United States for Indians because of their status as Indians, [and] *all restrictions and tax exemptions applicable to trust or restricted land or interests therein owned by them are terminated. . . .*" (emphasis added)

■ Since these sections of the Act evidence Congressional intent to hold rancheria lands in trust for the Indian people of the rancherias, as in fact was done, and to continue the lands in such trust status until all requirements for termination under the Act are met and the lands actually distributed, the plaintiff's lands herein did not become subject to taxation. *See, McCurdy v. United States*, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801 (1924).

Furthermore, plaintiff Smith shall be entitled to elect whether (1) to reconvey legal title to his remaining parcels, received during the distribution, back to the United States, to be held in trust as specified in the instrument of conveyance, provided he has not already conveyed those parcels to good-faith non-Indian purchasers, or (2) to retain legal title to his remaining parcels received during the distribution. Such election must be made within thirty days of the filing date of this Memorandum of Decision by plaintiff Smith filing a statement of election in this action. Any failure of plaintiff Smith timely to make such an election will be deemed a decision to retain legal title to his remaining parcels.

If plaintiff Smith elects to reconvey legal title to his remaining parcels back to the United States, to be held in trust for him, such parcels will not be subject to federal or state taxation unless and until the Rancheria is lawfully terminated and legal title to the parcels is again conveyed to plaintiff. However, if plaintiff Smith elects to retain legal title to his remaining parcels, or fails timely to make such an election, such parcels will become subject to federal and state taxation on the date such election is made, or if none is timely made, thirty (30) days from the filing date of this Memorandum of Decision.

In view of the foregoing declaratory relief to be granted, and especially in view of the election left to plaintiff, any injunctive relief, as to the Mendocino County defendants, would be premature.

## V. THE DANIELS ACTION

### A. Allegations of the Complaint

In *Daniels* the plaintiffs [10] have brought an action for declaratory and injunctive relief against ten defendants [11] based on jurisdiction under 28 U.S.C. § 1331 and § 1361.

Plaintiffs' first claim alleges that the federal defendants unlawfully terminated the Rancheria by not first providing adequate sanitation and irrigation systems on Rancheria lands, under agreements to be negotiated with the Indian people of the Rancheria, that the federal defendants unlawfully conveyed the water system lands [12] to the Association, and that the Association defendants have unlawfully excluded certain plaintiffs from Association membership and unlawfully denied or threatened to deny water service to plaintiffs.[13]

10. The plaintiffs are Cynthia Daniels, Kate Daniels, Mitchell and Frances Jack, Angelo Knight, Alice Elliott, and Walter Arnold, all distributees or heirs of distributees under the termination plan.

11. The defendants are the Secretary of the Interior, the Secretary of H.E.W., the Commissioner of Indian Affairs, the Sacramento (California) Area Director of the Bureau of Indian Affairs, the Superintendent of the Bureau of Indian Affairs, the Chief of the Phoenix (Arizona) Area Office of the Environment Health of the Public Health Service (collectively "the federal defendants"), and the Hopland Nakomis Association (the present water company on the Rancheria) and its officers and trustees, Leslie

Feliz, Esther Lockhart, and Theresa Feliz (collectively "the Association defendants"). The eleventh defendant, the Superior Court for the State of California, County of Mendocino, has been dismissed without prejudice (*Daniels*, Docket No. 44).

12. The Association also received other lands of the Rancheria as part of the distribution. However, none of those conveyances are in dispute in this action.

13. On June 12, 1974, this court granted a preliminary injunction enjoining the Association defendants from terminating or otherwise interfering with water service to the plaintiffs

Plaintiffs, under the first claim, seek a declaration (1) that the Rancheria was not lawfully terminated and is not terminated, (2) that the United States still owes a trust obligation to the Indian people of the Rancheria, (3) that the Rancheria water system lands were unlawfully conveyed to the Association, and (4) that the United States still owes a trust obligation to the Indian people of the Rancheria to supervise and control the management of the Rancheria water system, prevent unlawful termination or interruption of water service, and to supervise the affairs of the Association, or, if necessary, actually run the water system on the Rancheria.

Plaintiffs' second claim seeks cancellation of the allegedly unlawful deeds of title to Rancheria water system lands now held by the Association defendants and conveyed to them during the distribution of Rancheria lands.

Plaintiffs' third, fourth, and sixth claims are directed solely to Association activities —i. e., allegations of illegality in certain Association actions in terminating or interrupting water service, making special assessments, in conducting elections, and in making decisions as to Association membership.

## B. *SUMMARY JUDGMENT*

The federal defendants again concede that the Rancheria was unlawfully terminated and should not be treated as terminated, and that the United States still owes a trust obligation to the Indian people of the Rancheria.

This court has jurisdiction over the declaratory and injunctive relief claims under 28 U.S.C. § 1331 and § 1361. *See, Oneida Indian Nation v. County of Oneida, supra; Duncan v. Andrus, supra.*

The Association defendants oppose the motion, contending that the Rancheria was lawfully terminated. However, the evidentiary materials submitted by the Association defendants do not raise any genuine

and ordering the Association defendants to restore water service to plaintiff Kate Daniels

dispute over the material facts concerning termination of the Rancheria—only broad general conclusions unsupported by specific factual allegations are presented. The Association, as the party opposing the motion for summary judgment, has failed to present specific facts showing a genuine dispute over the material facts on the issue of termination. Accordingly, since the plaintiffs have sustained their initial burden of showing no genuine issue of material fact, the plaintiffs' motion for partial summary judgment on the issue of termination is hereby granted.

Since the Rancheria has not been lawfully terminated, and should not be treated as terminated, the United States still owes a fiduciary obligation to the Indian people of the Rancheria, including the duty to supervise and control the management of the Rancheria water system.

However, recognition of a continuing fiduciary obligation on the part of the United States to the Indian people of the Rancheria, based upon the conclusion that the Rancheria was not lawfully terminated, does not necessarily require, as plaintiffs urge, cancellation of the conveyance of Rancheria water system lands to the Association. Any such cancellation should be left to the election of the Indian people of the Rancheria. *See, Duncan v. Andrus, supra.*

Accordingly, the United States, acting as trustee, is hereby directed to promptly arrange a referendum at which the Indian people of the Rancheria may elect either to (1) cancel the deeds of water system lands to the Association, or (2) permit legal title to the water system lands to remain with the Association, under the supervision and control of the United States.

In view of the relief granted above, it is unnecessary for the court to reach the other claims raised by plaintiffs, directed to actions of the Association, for these issues are best left, in the first instance, to the United States acting in its fiduciary role.

(*Daniels,* Docket No. 13).

*CONCLUSION*

For the foregoing reasons the plaintiffs' motion for summary judgment is granted, with relief being granted as specified above.