BAILESS, Co. Treas., et al. v. PAUKUNE.

No. 34547. April 29, 1952.

Rehearing Denied May 27, 1952.

*244 P. 2d 1137.*

528

Frank Limerick, Co. Atty., Caddo County, and Brewster McFadyen, Anadarko, for plaintiffs in error.

Hatcher & Bond and J. F. Hatcher, Chickasha, for defendant in error.

PER CURIAM. This is an action by Juana Paukune to obtain an injunction to enjoin the county assessor of Caddo county, Oklahoma, from listing and assessing real estate located in Caddo county for ad valorem taxes, and to permanently enjoin the county treasurer of Caddo county from selling the land for delinquent taxes, striking said land from the tax rolls and enjoining the board of county commissioners of Caddo county from claiming any right, title or interest in the lands by reason of the levy and assessment of ad valorem taxes against same. The trial court granted the injunction, and the defendants appeal.

The land in question was allotted and Trust Patent No. 951 issued to Paukune, an Apache Indian, dated August 25, 1901. The Trust Patent reads in part as follows:

"Now Know Ye, That the United States of America, in consideration of the premises and in accordance with the provisions of the fifth section of the Act of Congress of February 8, 1887 (24 Stats. 388), Hereby Declares that it does and will hold the land thus allotted, subject to all the restrictions and conditions contained in said fifth section as modified by the fifth article of the agreement ratified by said sixth section of the Act of June 6, 1900, for the period of twenty-five years, in trust for the sole use and benefit of the said Pau-Kune, or in case of his decease, for the sole use of his heirs, according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

Paukune died in 1919, and left a will, which was approved by the Secretary of the Interior, and probated, under which Juana Paukune, his wife, became the owner of an undivided one-third interest in the land and Jose Paukune, his son, became owner of the remaining two-thirds interest in the land. The land is oil producing and is being produced under a departmental lease insofar as the interest of Jose Paukune is concerned. Jose Paukune is enrolled and

classed as an Indian. Juana Paukune is carried on the Department of the Interior records as not being an Indian, and is classified as a Mexican.

It was stipulated that the trust period provided for in the Trust Patent had been extended and had not expired at the time of the trial. No patent had been issued to Paukune or to Juana Paukune or Jose Paukune. Jauna Paukune had never requested the issuance of a patent to her covering her interest in the land. Jauna Paukune testified that she was born in Mexico and that her father was an Indian; but that she did not know the tribe, but that they had tribes in Mexico, the same as in the United States.

It is the opinion of this court that the question as to whether Juana Paukune is an Indian is, under the facts in this case, not material. Section 5 of the General Allotment Act of February 8, 1887, 24 Stat. 388, 389, mentioned in the Trust Patent issued to Paukune, which may be found at page 746, §1124 of Oklahoma Indian Land Laws, Second Edition by Mills, reads as follows:

"Trust patent to allottees. (5) That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declared that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may in any case in his discretion extend the period."

25 U. S. C. A. 348 is derived from section 5 of the General Allotment Act of February 8, 1887, cited above.

Section 8' of the General Allotment Act, which may be found at page 750, Paragraph 1134 of Mills, Second Edition, Oklahoma Indian Land Laws, provides:

"Par. 1134. Certain tribes excepted from provisions of act.-(8) That the provisions of this act shall not extend to the territory occupied by the Cherokees, Creeks, Choctaws, Chickasaws, Seminoles, and Osages, Miami and Peorias, and Sacs and Foxes, in the Indian Territory, * * *" See 25 U. S. C. 339.

The defendants contend that Juana Paukune is not an Indian and that consequently her interest in the land is subject to ad valorem taxes although no patent has been issued to her, and that the exemption should be limited to Indian heirs of the deceased allottee. The language of the Trust Patent and of the law above stated do not make this distinction either expressly or by inference. It is stated in Mills, Oklahoma Indian Land Laws, Second Edition, paragraph 354, page 348, as follows:

"The restrictions under the General Allotment Act and amendment run with the land and are applicable to it, not only in the hands of the allottee, but of his heirs as well. Any attempted alienation of the land by the heir, or any beneficiary interested in it or its rents, or the profits accruing therefrom, during the trust period, is absolutely void. And such restrictions are applicable to the heirs, regardless of whether the heirs are of Indian blood or not."

In Reed v. Clinton, 23 Okla. 610, 101 P. 1055, we had occasion to pass upon the validity of a conveyance by a white person who was an heir of an Indian allottee, and which white person was an adopted member of the tribe. Therein it was said:

"The only question involved in this case is as to whether or not the conveyance from the defendant in error, John Clinton, to the father of the plaintiff in error, was valid. Section 5 of the act of Congress approved February 8, 1887 (24 Stat. 389, c. 119; 1 Supp. Rev. St. p. 535; 3 Fed. St. Ann. p. 494),

provides: * * * The plaintiff in error insists that because the defendant in error is a white person, and not an Indian by blood, although he was a member by adoption of said tribe of Indians, such restrictions would not operate as to him, but that it was the intention of Congress not to include in the term 'heirs' white persons, although members of said tribe. The clause, 'if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void,' when considered in connection with the entire section, is plain and unambiguous. We are not permitted to look at the purpose for which the statute may have been passed, with a view of overturning the plain ` terms of the statute as expressed."

In United States v. Thurston County, (8 Cir.) 143 Fed. 287, 290, the original allottees under the General Allotment Act died and their Indian heirs sold the inherited land with the consent of the Secretary of the Interior and the county sought to tax the proceeds. The court said concerning the lands sold:

."* * * The lands which were sold were held by the complainant in trust to preserve them for the exclusive use and benefit of the respective Indian allottees and their heirs until the expiration of 25 years from the respective dates of their allotments, and then to convey them to the allottees respectively or their heirs 'in fee discharged of said trust and free of all charge or incumbrance whatsoever.' 22 Stat. 342, ch. 434, §6; 24 Stat. 389, ch. 119, §5. The undertaking to convey them at the end of the 25 years free of all charge or incumbrance imposed an obligation to keep them free from the burden or charge of state taxation, as well as of every other incumbrance. U. S. v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532."

In Childers v. Beaver et al., 270 U.S. 555, 46 S. Ct. 387, 388, 70 L. Ed. 730, it was stated:

"It must be accepted as established that during the trust or restrictive period Congress has power to control lands within a state which have been duly allotted to Indians by the United States and thereafter conveyed through trust or restrictive patents. This is essential to the proper discharge of their duty to a dependent people; and the means or instrumentalities utilized therein cannot be subjected to taxation by the state without assent of the Federal government."

See, also, United States v. F. H. Reily, 290 U. S. 33, 78 L. Ed. 154, wherein suit was brought by the United States to enforce its rights and regulations governing allotted Indian land held under a so-called trust patent issued pursuant to section 5 of the General Allotment Act of February 8, 1887 (25 U. S. C. A., 348), wherein the court said:

"It is settled, and is conceded, that a restriction on alienation such as is here shown is not personal to the allottee but runs with the lands and operates upon the heirs the same as upon the allottee. So it is apparent the heir's conveyance was void, unless in some way the restriction was removed before the conveyance was made."

Defendants stress the applicability of the case of Levindale Lead & Zinc Mining Co. et al. v. Coleman, 241 U. S. 432, 60 L. Ed. 1080. This case is not in point for the reason that it involved an Osage tribe allotment and this tribe was expressly excepted from the General Allotment Act.

Affirmed.

This court acknowledges the services of Attorneys Charles E. Earnheart, James R. Eagleton and Milton R. Elliott, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.