Lee ARENAS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Eleuteria Brown ARENAS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 1321, 6221.

United States District Court
S. D. California, Central Division.

April 27, 1956.

Irl Davis Brett, Los Angeles, Cal., for plaintiff and petitioner Lee Arenas and petitioner Richard Brown Arenas.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Los Angeles, Cal., for defendant United States of America.

James W. Hickey, Sacramento, Cal., Walter H. Miller and Vincent J. Mc-Mahon, Los Angeles, Cal., for claimant Robert C. Kirkwood, Controller of State of California.

Edmund G. Brown, Atty. Gen., James C. Maupin, Deputy Atty. Gen., for claimants People of State of California, and Franchise Tax Board of State of California.

MATHES, District Judge.

The State of California seeks to impress upon certain funds on deposit in the Registry of this Court a lien for alleged inheritance taxes claimed to be due the State, "by reason of the death of Guadalupe Rice Arenas [wife of Lee Arenas] and by reason of the death of Eleuteria Brown Arenas [adopted daughter of Lee and Guadalupe Arenas] * * *." Cal.Rev. & Tax Code, § 13401 et seq.

The funds in controversy are remnants of larger funds derived from sales, with the consent of the United States, 25 U.S. C.A. § 392, of a portion of the lands within the Palm Springs Reservation of the Agua Cliente Band of Mission Indians previously allotted to Lee Arenas and to the heirs of Guadalupe, meantime deceased, pursuant to § 4 of the Mission Indian Act. 26 Stat. 712, Act Jan. 12, 1891; see 24 Stat. 388, Act Feb. 8, 1887, 25 U.S.C.A. § 331 et seq.; 36 Stat. 859, Act June 25, 1910; 39 Stat. 969, 976, Act March 2, 1917.

The sales were made in proceedings ancillary to these suits for allotments under 25 U.S.C.A. § 345, in order to provide cash with which to pay allowances made for the fees and expenses of the attorneys who have represented the successful claimants to the Arenas allotments throughout this long litigation. Arenas v. Preston, 9 Cir., 1956, 232 F.2d 77; Id., 9 Cir., 1950, 181 F.2d 62, 68; see Arenas v. United States, 9 Cir., 1943, 137 F.2d 199, reversed, 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363; Id. on remand, D.C.S.D.Cal.1945, 60 F.Supp. 411, affirmed in part and reversed in part, 9 Cir., 1946, 158 F.2d 730, certio-rari denied, 1947, 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853.

Following the death of Guadalupe, Lee Arenas as surviving husband received one-half, and Eleuteria as surviving daughter received one-half, of Guadalupe's allotment. 25 U.S.C.A. § 372; Arenas v. United States, 9 Cir., 1952, 197 F.2d 418.

Upon the death of Eleuteria in 1954, her surviving son, Richard Brown Arenas, was declared pursuant to 25 U.S.C. A. § 372 to have inherited his mother's interest in Guadalupe's allotment.

The State's claim for inheritance taxes is based upon the succession of Lee Arenas as surviving husband of Guadalupe, and Richard as surviving son of Eleuteria, to the allotted lands.

Lee and Richard have filed an ancillary petition in each of these suits, seeking a declaration that no inheritance-tax lien exists against the remaining proceeds from the allotted-land sales.

The lands so sold were subject to trust patents issued under 25 U.S.C.A. § 348, which provides that "patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided*, That the President of the United States may in any case in his discretion extend the period."

In Arenas v. Preston, supra, Judge Stephens observed for the Court that: "The interest of the United States in the allotment will not cease to exist until the 'trust patent' to the property is ripened into an unqualified patent * * *." 181 F.2d at page 67.

And it has recently been held that the proceeds from the sales are held by the United States subject to the same trust as the lands prior to sale. United States v. Preston, supra, 232 F.2d 77; see Buchanan v. Alexander, 1846, 4 How. 20, 45 U.S. 20, 11 L.Ed. 857; cf. Federal Housing Administration v. Burr, 1940, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724.

The United States "does not assert or claim any lien against the funds * * * by reason of any Federal Estate taxes * * *." Cf. Landman v. Commissioner, 10 Cir., 1941, 123 F.2d 787, certiorari denied, 1942, 315 U.S. 810, 62 S.Ct. 799, 86 L.Ed. 1209.

■ The state inheritance taxes here claimed are in the nature of an excise imposed upon the privilege of succeeding to property by inheritance under the law of California. Stebbins v. Riley, 1925, 268 U.S. 137, 140, 45 S.Ct. 424, 69 L.Ed. 884; Campbell v. State of California, 1906, 200 U.S. 87, 26 S.Ct. 182, 50 L.Ed. 382; Magoun v. Illinois Tr. & Sav. Bank, 1898, 170 U.S. 283, 288, 18 S.Ct. 594, 42 L.Ed. 1037; cf. United States Trust Co. of New York v. Helvering, 1939, 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104; Knowlton v. Moore, 1900, 178 U.S. 41, 47, 20 S.Ct. 747, 44 L.Ed. 969; Scholey v. Rew, 1874, 23 Wall. 331, 90 U.S. 331, 346, 23 L.Ed. 99.

■ The Act of Congress which provides for allotment of the Mission Indian lands in trust specifies that the trust shall be for the "use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located * * *." 24 Stat. 389, Act Feb. 8, 1887, 25 U.S.C.A. § 348.

Thus the Federal statute in effect incorporates by reference the California law as to intestate succession; and so the State law is adopted as Federal law. Cf. Uravic v. F. Jarka Co., 1931, 282 U.S. 234, 240, 51 S.Ct. 111, 75 L.Ed. 312.

■ Hence the inheritance of allotted Mission Indian lands held under a trust patent devolves in accordance with, but not under, California law. And intestate succession results under and by force of Act of Congress. See 25 U.S.C.A. §§ 348, 371–379.

Accordingly the right of petitioners to succeed to Guadalupe's allotment is not dependent upon the law of California, but upon Federal law. This right of succession is the privilege here sought to be taxed.

And as explained in Mager v. Grima, 1850, 8 How. 490, 49 U.S. 490, 12 L.Ed. 1168, "if a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy." 49 How. at page 494.

But only "the authority which confers it may impose conditions upon it." Magoun v. Illinois Tr. & Sav. Bank, supra, 170 U.S. at page 288, 18 S.Ct. at page 596; cf. Chanler v. Kelsey, 1907, 205 U.S. 466, 479–482, 27 S.Ct. 550, 51 L.Ed. 882 (dissenting opinion, Holmes, J.).

Here "the lands really passed under a law of the United States", and not by California's permission. Childers v. Beaver, 1926, 270 U.S. 555, 559, 46 S.Ct. 387, 388, 70 L.Ed. 730.

Until recently it could be stated as a general proposition that Indian lands held under trust patents, such as those involved here, are immune from all manner of taxation, in view of the undertaking "that at the expiration of said [trust] period the United States will convey the same by patent to said Indian, or his heirs * * * in fee, discharged of said trust and free of all charge or incumbrance whatsoever * * *.". 25 U.S.C.A. § 348; Board of Commissioners of Creek County, Okl. v. Seber, 1943, 318 U.S. 705, 716–717, 63 S.Ct. 920, 87 L.Ed. 1094; Heckman v. United States, 1912, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Rickert, 1903, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; The New York Indians, 1866, 5 Wall. 761, 72 U.S. 761, 18 L.Ed. 708; The Kansas Indians, 1866, 5 Wall. 737, 72 U.S. 737, 18 L.Ed. 667.

In Oklahoma Tax Comm'n of State of Oklahoma v. United States, 1943, 319 U. S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612, upon considering the validity of Oklahoma's imposition of "inheritance taxes * * * upon the transfer of the estates of three deceased members of the Five Civilized Tribes" involving in part "restricted cash and securities held for the Indians by the Secretary of the Interior", Id., 319 U.S. at pages 599, 600, 63 S.Ct. at page 1284, the Supreme Court held that "the transfer of those lands which Congress has exempted from direct taxation by the state are also exempted from estate taxes", Id., 319 U.S. at page 611, 63 S.Ct. at page 1290, but concluded "upon an examination of both the cases * * * and the statute which imposes the restriction [47 Stat. 777, Jan. 27, 1933], that the restriction, without more, is not the equivalent of a Congressional grant of estate tax immunity." 319 U.S. at pages 601–602, 63 S.Ct. at page 1285.

Although the Supreme Court makes no mention of it, the scholarly dissent of Circuit Judge Murrah in Oklahoma Tax Commission rests largely upon the contention that the property in question devolved not only in accordance with, but also under and by force of Oklahoma law. United States v. Oklahoma Tax Commission, 10 Cir., 1942, 131 F.2d 635, 638–640, reversed Id., supra, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612.

As Judge Murrah expessed it: "The law of Oklahoma is not merely a guide or criterion, but it creates the right and provides the means and manner of disposition." Id., 131 F.2d at page 639; see Jefferson v. Fink, 1918, 247 U.S. 288, 290, 38 S.Ct. 516, 62 L.Ed. 1117; In re Pryor's Estate, 199 Okl. 17, 181 P.2d 979, 982, certiorari denied Pryor v. Craft, 1947, 332 U.S. 816, 68 S.Ct. 155, 92 L.Ed. 393; cf. Blundell v. Wallace, 1925, 267 U.S. 373, 45 S.Ct. 247, 69 L. Ed. 664.

West v. Oklahoma Tax Commission, 1948, 334 U.S. 717, 68 S.Ct. 1223, 92 L. Ed. 1676, affirming Yarbrough v. Oklahoma Tax Commission, 1947, 200 Okl. 402, 193 P.2d 1017, involved "the power of the State of Oklahoma to levy an inheritance tax on the estate of a restricted Osage Indian." Id., 334 U.S. at page 718, 68 S.Ct. at page 1224.

Apparently accepting the view of the Oklahoma court that the property there in question devolved not only in accordance with, but also under and by force of Oklahoma law, Id., 334 U.S. at page 722, 68 S.Ct. at page 1226; see 34 Stat. 539, Act June 28, 1906, the Supreme Court held that Oklahoma had the power to levy an inheritance tax, declaring that "until Congress has in some affirmative way indicated * * * that the transfer be immune from the inheritance tax liability, the Oklahoma Tax Commission case permits that liability to be imposed. But that case also makes clear that should any of the properties transferred be exempted by Congess from direct taxation they cannot be included in the estate for inheritance tax purposes." 334 U.S. at pages 727–728, 68 S.Ct. at page 1228.

Interesting to note at this juncture is the fact that Congress has provided that the Federal statute, 25 U.S.C.A. § 348, under which the allotment at bar devolved upon Lee Arenas and Richard, "shall not extend to the territory occupied by the Cherokees, Creeks, Choctaws, Chickasaws, Seminoles, [the Five Civilized Tribes] and Osage * * * in Oklahoma * * *." 25 U.S.C.A. § 339; see Jefferson v. Fink, supra, 247 U.S. at page 290, 38 S.Ct. 516, 62 L.Ed. 1117; Stephens v. Cherokee Nation, 1899, 174 U.S. 445, 447, 19 S.Ct. 722, 43 L.Ed. 1041.

This fact lends support to the view that West, supra, 334 U.S. 717, 68 S.Ct. 1223, 92 L.Ed. 676, and Oklahoma Tax Commission, supra, 319 U.S. 598, 63 S. Ct. 1284, 87 L.Ed. 1612, are to be distinguished from the cases at bar upon the ground that in those cases devolution was by force of Oklahoma law, whereas here intestate succession occurred by force of Federal statute, 25 U.S.C.A. § 348.

It is unnecessary however to distinguish these decisions, since the cases

at bar clearly fall within the above-quoted exception stated in the West opinion. For subsequent to the decision in West, upon enacting legislation ceding limited State jurisdiction over civil and criminal actions involving the Indians of California, Congress expressly declared that: "Nothing * * * [herein] shall authorize the alienation, encumbrance, or taxation of any real or personal property * * * belonging to any Indian * * * that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States * * *." 67 Stat. 588, 589, Act Aug. 15, 1953, 28 U.S.C. § 1360(b), 18 U.S.C. § 1162(b); cf. Van Brocklin v. State of Tennessee, 1886, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845.

Furthermore § 6 of the General Allotment Act, 25 U.S.C.A. § 349, provides that: "At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 348, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; * * * Provided, That the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent * * * at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed * * * And provided further, That the provisions of sections * * * 348 to 350, inclusive * * * shall not extend to any Indians in the former Indian Territory." 24 Stat. 390, Act Feb. 8, 1887; 34 Stat. 182, Act May 8, 1906; see Monson v. Simonson, 1913, 231 U.S. 341, 345–346, 34 S.Ct. 71, 58 L.Ed. 260.

It follows then that the funds at bar are not subject to California's claim of lien for inheritance taxes.

The State also presents a motion to establish a lien for "personal income taxes for the years 1947, 1948 and 1949" allegedly due from Lee Arenas under Cali-

fornia's Personal Income Tax Law. Cal. Rev. & Tax Code, § 18882. There is no showing as to the source of the income sought to be taxed.

Assuming arguendo that the income taxes in question are validly laid, the trust funds here are for reasons already stated immune from the claim of lien. Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611; cf. Helvering v. Mountain Producers Corp., 1938, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907; Superintendent, etc. v. Commissioner, 1935, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517; Choteau v. Burnet, 1931, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353.

The motion of the State of California filed March 5, 1956, must be denied, as must the prayer of the State's answer to the petition.

Since the petition also involves other claims, it will be restored to the calendar for further hearing.